UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CARLOS MANUEL ALVARADO,

    Plaintiff,

v.                                                                                          Case No. 3:19-cv-661-J-MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Following an administrative hearing held on May 9, 2018, the assigned Administrative Law Judge ("ALJ") K. Barlow issued a decision finding Plaintiff not disabled from April 10, 2015, the alleged disability onset date, through July 17, 2018, the date of the ALJ's decision.[2]  (Tr. 22-33, 42-60.)  Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **REVERSED and REMANDED**.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Docs. 17 & 20.)

[2] Plaintiff had to establish disability on or before December 31, 2020, his date last insured, in order to be entitled to a period of disability and DIB.  (Tr. 23.)

**I.      Standard of Review**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

**II.     Discussion**

Plaintiff raises two issues on appeal.  First, Plaintiff argues that the ALJ erred in failing to properly weigh the opinion of his treating physician, Alejandro C. Dizon, M.D.  (Doc. 24 at 5-9.)  Second, Plaintiff argues that the ALJ failed to

adequately assess his subjective complaints.  (*Id.* at 9-12.)  Defendant counters that substantial evidence supports the ALJ's decision to discount the opinion of Dr. Dizon and her assessment of Plaintiff's subjective complaints.  (Doc. 25 at 4-15.)  The undersigned agrees with Plaintiff on the first issue, and, therefore, does not address the second issue in detail.

### A. Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3).  With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5)

3

specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).  "However, the ALJ is not required to explicitly address each of those factors.  Rather, the ALJ must provide 'good cause' for rejecting a treating physician's medical opinions."  *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam), 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008).  Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'"  *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam); *see also* SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining

sources). While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision. SSR 96-6p.

When a claimant seeks to establish disability through his own testimony of pain or other subjective symptoms, the Eleventh Circuit's three-part "pain standard" applies. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id.*

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.*

Once a claimant establishes that his pain is disabling through objective medical evidence from an acceptable medical source that shows a medical impairment that could reasonably be expected to produce the pain or other symptoms, pursuant to 20 C.F.R. §§ 404.1529(a), 416.929(a), "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability," *Foote*, 67 F.3d at 1561. *See also*

5

SSR 16-3p[3] (stating that after the ALJ finds a medically determinable impairment exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the individual's symptoms" to determine "the extent to which an individual's symptoms limit his or her ability to perform work-related activities").

As stated in SSR 16-3p:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ must] examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.
> . . .
> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.[4] The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer

---

[3] SSR 16-3p rescinded and superseded SSR 96-7p, eliminating the use of the term "credibility," and clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p.

[4] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures (other than treatment) used to relieve the pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p.

> can assess how the adjudicator evaluated the individual's symptoms.
> . . .
> In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities[.]

SSR 16-3p.

"[A]n individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed" will also be considered "when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities."  *Id.*  "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [the adjudicator] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."  *Id.*  However, the adjudicator "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."  *Id.*  In considering

7

an individual's treatment history, the adjudicator may consider, *inter alia*, one or more of the following:

- That the individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms;
- That the individual may receive periodic treatment or evaluation for refills of medications because his or her symptoms have reached a plateau;
- That the individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms;
- That the individual may not be able to afford treatment and may not have access to free or low-cost medical services;
- That a medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual;
- That due to various limitations (such as language or mental limitations), the individual may not understand the appropriate treatment for or the need for consistent treatment.

*Id.*

### B. The ALJ's Decision

At step two of the sequential evaluation process,[5] the ALJ found that Plaintiff had the following severe impairments: disorder of the spine, migraine headaches, and diverticulitis (20 C.F.R. §§ 404.1520(c), 416.920(c)). (Tr. 25.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 26.) Further, the ALJ found that Plaintiff had the

---

[5] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

RFC to perform light work[6] with the following limitations:

> [N]o climbing and only occasional stooping, crouching, crawling, kneeling, and balancing. The claimant should have no exposure to hazards, and no exposure to concentrated fumes, gases, and poorly ventilated areas. The claimant needs to change positions between sitting and standing hourly, and should be able to perform the job duties from either a seated or a standing position.

(*Id.*)

In making this finding, the ALJ discussed, *inter alia*, Plaintiff's subjective complaints, the objective medical findings, the treatment and examining records, and the opinion evidence. (Tr. 26-30.) In considering Plaintiff's symptoms, the ALJ summarized his hearing testimony as follows:

> Claimant testified that his back problems began in 2012 when he fell; he continued working until he was fired in April 2015 for not completing paperwork. He said that he explained that he did not feel well and was told he needed to leave. He testified that he takes Ibuprofen every day, having taken Oxycodone in the past. He testified that he has migraine headaches twice a week, which end after an hour or two. With regard to his functional ability, he estimated that he could lift 25 pounds, but he stated that he cannot lift it constantly. When asked what he can comfortably lift, he stated that he did not feel like he could hold his balance. He stated that lifting bothers his back and that he would lift something and let it go quickly. He testified that he feels best when he stands, and that he can do so for 20 minutes to an hour.
>
> The claimant testified that he spends his time caring for his children; he drives, cooks prepared food, cleans, and washes laundry. He stated that he has pain, but has responsibility as a single father of three children (ages 10, 9, and 5) so he must push through the pain. He stated that he gets his children to the bus stop and tries to only

---

[6] By definition, light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; it requires a good deal of walking, standing, or sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b); SSR 83-10.

> take the medication that causes drowsiness at night. He stated that his family helps with laundry. He stated that he walks for exercise about ten to 15 minutes some days. He testified that he does not stretch his back because he feels weak.

(Tr. 27.)

The ALJ also considered Plaintiff's December 2015 function report, noting that:

> [Plaintiff] reported that he spent his days taking his children to and from school, cooking, washing clothes, and lying down. He reported that he cared for his children, including tasks such as feeding them, bathing them, dressing them, and taking them to school. He stated he was able to cook complete meals, tacos, rice, beans, meat, fajitas, and sandwiches. He indicated that he shopped in stores for groceries and clothes. He reported difficulty bending and sitting for too long. He reported that he could lift five pounds and walk one to two miles. He also reported that he could follow written instructions good [sic] and spoken instructions very well (Exhibit 2E).

(*Id.*)  The ALJ then found, after careful consideration of the evidence, that while Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms[,] . . . [his] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record."  (*Id.*) Specifically, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of his symptoms [were] inconsistent with the medical evidence."  (Tr. 28.)

After summarizing the objective and opinion medical evidence (Tr. 28-30), including Dr. Dizon's February 2018 opinion that Plaintiff was unable to work "even a desk job due to severe back pain from degenerative disc disease," and

10

could not work due to pain medications that made him dizzy and drowsy,[7] (Tr. 30), the ALJ concluded that "the evidence of record [did] not establish that the claimant's impairments prevent[ed] him from performing work in accordance with the" RFC assessment.  (*Id.*)  The ALJ explained:

> The claimant testified that he can lift 25 pounds and that, while he has difficulty getting comfortable, he feels best when standing.  He indicated he can stand 20 minutes to an hour.  His treatment has been largely conservative and he currently only takes Ibuprofen for pain relief.  Physical examinations have not shown any significant abnormalities.  He has no neurological deficits, retains normal strength, and retains normal gait.  Despite being advised by his doctor, he does not stretch.  In addition, his daily activities suggest a greater functional capacity than alleged.  He is a single father of three children and care[s] for them.  He gets his children off to school, prepares meals, cleans, washes laundry, shops, and drives.

(*Id.*)  Thus, the ALJ found, Plaintiff's allegations were "not consistent with the medical and other evidence of record."  (*Id.*)

The ALJ accorded great weight to the opinion evidence of the State agency medical consultant, who opined that Plaintiff "could perform light work with occasional climbing of ladders, ropes, or scaffolds and frequent crouching,

---

[7] Specifically, in a letter dated February 1, 2018, Dr. Dizon certified that Plaintiff was his patient and opined as follows:
> [Plaintiff] is unable to work even at desk jobs because of severe back pain due to degenerative disk disease of the spine.  Also[,] he is on pain medications that will make him dizzy and drowsy to relieve the back pain [therefore] he cannot work.  He lost his insurance and is unable to see the back pain specialist to give him pain shots.  He also suffers from migraine headaches, prostate problems, and diverticulitis.
> Please expedite his disability application so he can provide for his children's needs.
> . . .

(Tr. 633.)

11

stooping, or climbing [of ramps] or stairs (Exhibits 4A and 5A)." (*Id.*) In according great weight to this opinion, the ALJ found that it was supported by Plaintiff's conservative treatment, physical examination findings, and daily activities. (*Id.*) However, in light of Plaintiff's "complaints and testimony regarding difficulty finding a comfortable position," the ALJ found that Plaintiff needed to "change positions between sitting and standing hourly, and should be able to perform the job from either a seated or standing position." (*Id.*)

The ALJ then accorded no weight to Dr. Dizon's opinion, finding that it was "wholly inconsistent with the claimant's daily activities." (*Id.*) The ALJ explained that Plaintiff was a single parent of three children, who drove, shopped, cooked, cleaned, washed laundry, helped with homework, and walked for exercise and that "[t]his level of activity [was] inconsistent with Dr. Dizon's opinion that the claimant was unable to work due to severe back pain, drowsiness, and dizziness." (*Id.*) The ALJ also concluded that "Dr. Dizon's examination findings and treatment notes" did not support his opinion. (*Id.*)

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 30-31.) At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (Tr. 31-32.) In making this determination, and in assessing "the extent to which these limitations erode[d] the unskilled light occupational base," the ALJ relied on the testimony of a vocational expert ("VE") who testified that Plaintiff

12

could have performed the jobs of small parts assembler, electronics worker, and laundry folder. (Tr. 32.) As noted in the ALJ's decision, all of these representative occupations were classified as unskilled, light exertion work with a Specific Vocational Preparation ("SVP") of 2. (*Id.*) Thus, the ALJ concluded that Plaintiff was not disabled from April 10, 2015 through the date of the decision. (Tr. 32-33.)

### C. Analysis

The Court agrees with Plaintiff that the ALJ improperly evaluated the opinion evidence of Dr. Dizon, his treating physician. Plaintiff argues that the ALJ erred in discounting the opinion of Dr. Dizon that he was "unable to work even at desk jobs due to severe back pain" caused by degenerative disc disease and due to pain medication that caused him to be dizzy and drowsy. (Doc. 24 at 7.) Plaintiff argues that the ALJ gave Dr. Dizon's opinion no weight based solely on her conclusion that it was inconsistent with Plaintiff's activities of daily living. (*Id.*) Plaintiff contends that his activities of daily living were not inconsistent with Dr. Dizon's opinion that he was completely disabled, and that he clarified at the hearing that he experienced pain performing his daily activities, which consisted of household chores and caring for his three children, and that "he received assistance from his family in completing many of the household chores." (*Id.*) Plaintiff argues that, like in *Cavarra v. Astrue*, 393 F. App'x 612, 614-15 (11th Cir. 2010), the ALJ erred in discounting the opinion of Dr. Dizon based solely on his daily activities, as "the Eleventh Circuit has recognized that performance of

13

household chores with difficulty is not inconsistent with disability." (*Id.* at 8-9.) Moreover, Plaintiff argues that the ALJ erred in failing to "consider any of the other required factors in his evaluation of Dr. Dizon's opinion." (*Id.* at 9.)

Defendant counters that substantial evidence supports the ALJ's decision to accord no weight to the opinion of Dr. Dizon. (Doc. 25 at 4-10.) First, Defendant contends that Dr. Dizon's opinion regarding Plaintiff's inability to work, "without giving any opinion on any functional abilities or limitations," was not a medical opinion, but rather an opinion on an issue reserved for the Commissioner and, thus, was not entitled to any weight. (*Id.* at 6.) Defendant also claims that substantial record evidence, including Plaintiff's daily activities, normal or unremarkable examination findings, and limited use of pain medication, supports the ALJ's decision to give no weight to the opinion of Dr. Dizon. (*Id.* at 7.) With respect to Plaintiff's argument that the ALJ failed to specifically discuss the 20 C.F.R. §§ 404.1527(c) and 416.927(c) factors, Defendant counters that "Plaintiff misrepresented the ALJ's decision in stating that [she] solely discounted Dr. Dizon's opinion based on Plaintiff's daily activities" where the "ALJ also discounted the opinion based on the lack of support from Dr. Dizon's treatment notes." (*Id.* at 9.)

As Plaintiff notes, the ALJ gave no weight to the opinion of Dr. Dizon because it was "wholly inconsistent with the claimant's daily activities," which the ALJ found to suggest "a greater functional capacity than alleged." (Tr. 30.) However, the performance of limited daily activities is not necessarily

14

inconsistent with allegations of disability. *See, e.g.*, *Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985) (per curiam) (reversing and remanding the case to the Commissioner for lack of substantial evidence to support the finding that the claimant had no severe impairment, even though the claimant testified that she performed housework for herself and her husband, accomplished other light duties in the home, and "was able to read, watch television, embroider, attend church, and drive an automobile short distances"); *White v. Barnhart*, 340 F. Supp. 2d 1283, 1286 (N.D. Ala. 2004) (holding that substantial evidence did not support the decision denying disability benefits, even though the claimant reported that she took care of her own personal hygiene, cooked, did housework with breaks, helped her daughter with homework, visited her mother, socialized with friends sometimes, and, on a good day, drove her husband to and from work, but needed help with grocery shopping, and could sit, stand, or walk for short periods of time). Rather, the record shows that Plaintiff's activities of daily living were limited and demonstrates that he needed regular assistance with household chores, laundry, and shopping and relied on his children, family, and friends for help. (*See, e.g.*, Tr. 48-51, 239-42, 281, 283-85.)

Additionally, while the ALJ also discounted the opinion of Dr. Dizon because his "examination findings and treatment notes [did] not support this opinion" (Tr. 30), this reason is not supported by substantial evidence. Dr. Dizon's treatment records consistently revealed positive examination findings, including tender points in the lumbar area, positive bilateral straight leg raises,

15

and reports of severe pain in the lower and upper back. (*See, e.g.*, Tr. 465, 469, 502, 509-10, 513-14, 516-17, 524-25, 530-31, 642-61.) Dr. Dizon assessed, *inter alia*, dorsalgia; cervicalgia; chest pain; unspecified thoracic, thoracolumbar, and lumbosacral intervertebral disc disorder; migraine, unspecified, non-intractable; and insomnia due to medical condition. (Tr. 644, 648.) He also prescribed medication, including narcotic pain medication to treat Plaintiff's back pain, made various referrals for pain management, and referred Plaintiff to various specialists. (Tr. 449-471, 502, 509-31, 642-61.) In addition, while the ALJ notes that Plaintiff received conservative treatment and only took Ibuprofen, the record, including Dr. Dizon's letter and treatment records, reveals that Plaintiff had difficulty receiving medical treatment and medication due to financial difficulties and lack of insurance. (*See* Tr. 53, 516, 633; *see also* Tr. 642 (noting, on February 1, 2018, that Plaintiff saw Dr. Patel who "wanted to do [a] spinal procedure[,] but he lost his insurance" and the "spinal shots were cancelled").)

Moreover, the examination findings were not as unremarkable as the ALJ suggests. The examinations for the relevant period often revealed, *inter alia*, lumbar facet tenderness; moderate left sacroiliac joint tenderness; limited flexion and extension of the lumbar spine; positive lumbar facet loading on the left side; positive FABER test on the left side; and muscle spasms. (*See, e.g.*, Tr. 520, 553, 578, 581, 592, 625.) Plaintiff's moderate to severe pain was also well-documented and confirmed by the physical examinations in the record. (*See* Tr. 465, 487, 502, 509, 550, 561, 589, 591, 609, 612, 625, 642, 644.)

Further, the abnormal MRIs and other diagnostic exams were consistent with the examination findings and Plaintiff's reported symptoms.  (*See* Tr. 422 (treatment records dated March 14, 2014, recommending that Plaintiff consider undergoing a transforaminal lumbar interbody fusion (MIS TLIF) of the left L5-S1 due "to the ongoing symptoms, lack of response to conservative treatment[,] and associated radiographic findings"); Tr. 428 ( lumbar MRI impression dated February 4, 2013, revealing "[m]ild broad-based disc herniation at the L5-S1 level causing right neuroforaminal stenosis"); Tr. 506-07 (noting, on August 30, 2016, that an MRI of the lumbar spine revealed disc bulging at L4-5 and L5-S1 and a shallow right foraminal disc protrusion at L5-S1); Tr. 622 (noting, on December 6, 2017, that a "[d]irect review of the lumbar spine [X-R]ay image shows left LS transverse process pseudoarthrosis"); Tr. 639 (noting, on May 19, 2017, that a cervical spine MRI revealed a "C5-6 right subarticular disc protrusion causing severe narrowing of the right side of the spinal canal and compression of the right hemi cord but no convincing signal abnormality" and that "[t]he protrusion extends into[,] and moderate[ly] to severely narrows[,] the right C5-6 neural foramen").  *But see* Tr. 447 (noting, on May 6, 2014, that Plaintiff's MRI and X-Ray were "unremarkable and show[ed] no significant pathology that would warrant surgical treatment" and recommending continuing with conservative treatment).)  Moreover, the record shows that in December 2017, after failing conservative treatment, including epidural steroid injections and physical therapy, Plaintiff was referred to neurosurgery for possible surgical intervention for his left

17

pseudoarthrosis and was "scheduled for left lumbar facet medial bra[n]ch blocks at L3/4, L4/[5], and L[5]/S1." (Tr. 621-26.)  Those results, along with the physical examination findings and Plaintiff's course of treatment, supported Plaintiff's complaints of disabling symptoms.

Based on the foregoing, the Court cannot conclude that the ALJ's reasons for discounting the opinion of Dr. Dizon were supported by substantial evidence in the record.  To the extent the ALJ relied on the March 2016 opinion of the non-examining State agency medical expert (Tr. 97-100), that opinion pre-dated a substantial part of the medical record.  Because the Court concludes that the ALJ erred in her evaluation of the medical opinion of Dr. Dizon, the Court will not separately address Plaintiff's arguments regarding the ALJ's assessment of his subjective complaints.  Nevertheless, as discussed *supra*, the Court notes that it was improper for the ALJ to conclude that Plaintiff's limited participation in certain daily activities, including household chores, was consistent with the ability to perform competitive work.  The performance of limited daily activities is not necessarily inconsistent with allegations of disability.  *See, e.g.*, *Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985) (per curiam); *White v. Barnhart*, 340 F. Supp. 2d 1283, 1286 (N.D. Ala. 2004).  Therefore, this case will be reversed and remanded for further proceedings.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), with instructions to the ALJ to

conduct the five-step sequential evaluation process in light of all the evidence, including the opinion evidence from treating, examining, and non-examining sources, and conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3. In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** in Jacksonville, Florida, on September 23, 2020.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record